```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
CROSSTOWN SONGS U.K. LIMITED,
and KINGSTREET MEDIA (SONGS) 1
LIMITED,

                Plaintiffs,         OPINION

        -against-                   07 Civ. 2080 (MGC)

SPIRIT MUSIC GROUP, INC.,

                Defendant.

-----------------------------------X
```

APPEARANCES:

       MANATT, PHELPS & PHILLIPS, LLP
       Attorneys for Plaintiffs
       7 Times Square, 22nd Floor
       New York, New York 10036

       By: L. Peter Parcher, Esq.
           Gregory A. Clarick, Esq.
           Amy T. Sheehan, Esq.


       SONNENSCHEIN NATH & ROSENTHAL LLP
       Attorneys for Defendant
       1221 Avenue of the Americas
       New York, New York 10020

       By: Paul V. LiCalsi, Esq.
           Jeffrey M. Movit, Esq.

1

**Cedarbaum, J.**

Plaintiffs Crosstown Songs U.K. Limited ("Crosstown") and Kingstreet Media (Songs) 1 Limited ("Kingstreet"), both U.K. companies, sue defendant Spirit Music Group, Inc. ("Spirit"), a Delaware corporation with its principal place of business in New York, for breach of contract and copyright infringement. Spirit moves to dismiss the complaint on the ground of *forum non conveniens*. For the following reasons, Spirit's motion is granted.

## BACKGROUND

Spirit is a New York-based independent music publisher. It owns or controls numerous catalogs of musical compositions, which it licenses for use in North America in exchange for royalty payments. This is commonly referred to as "music administration." Spirit pays other companies to administer its compositions overseas. In addition, it administers compositions in North America for publishing companies that are based overseas. When Spirit serves as an administrator for another publishing company, it turns over the royalties it collects less a pre-arranged fee.

On January 1, 1996, Spirit contracted with Palan Music Publishing Ltd. ("Palan"), a music publisher based in the United Kingdom, to administer in North America a catalog of musical compositions owned by Palan (the "Palan catalog"). Pursuant to

the parties' Letter Agreement, Spirit was entitled to keep between 15% and 30% of each royalty it collected.  Sometime after the Letter Agreement was signed, Palan engaged Music Copyright Services PLC ("MCS") to administer the Palan catalog worldwide.  MCS allowed Spirit to continue administering the Palan catalog in North America on MCS's behalf, and Spirit continued to perform under the terms of the Letter Agreement.

In early 2005, unbeknownst to Spirit, Kingstreet acquired the Palan catalog.  Kingstreet engaged another U.K. company, Kingstreet Media Group Limited ("KMG"), to administer the Palan catalog on Kingstreet's behalf.  In turn, KMG contracted with MCS to allow MCS to continue to subadminister the Palan catalog, and MCS continued to allow Spirit to subadminister the Palan catalog in North America.  Spirit and MCS did not sign another contract, but continued to operate under the Letter Agreement.  Spirit did not enter into any contract with KMG or Kingstreet.

One year earlier, on January 5, 2004, Spirit had engaged MCS to administer a catalog of Spirit's music compositions (the "Spirit catalog") overseas. However, MCS failed to render timely payment to Sprint of the royalties it collected on the Spirit catalog.  As an excuse for its non-payment, MCS contended that, for reasons unknown to Spirit, it was actually KMG who had been collecting the Spirit-owned royalties, and that MCS had never received the royalties from KMG.  On April 25, 2005, at Spirit's

3

insistence, KMG signed an agreement promising to pay Spirit the unpaid royalties owed on the Spirit catalog. Notwithstanding this agreement, neither MCS nor KMG ever made royalty payments to Spirit for any accounting period after September 2005.

As of January 2006, KMG and MCS owed Spirit approximately £95,220 in unpaid royalties. Spirit continued to administer the Palan catalog, but ceased turning over the royalties it collected to MCS or KMG in order to offset the royalties to which it was entitled on the Spirit catalog.

On March 10, 2006, Kingstreet terminated its agreement with KMG. Several days later, KMG filed for bankruptcy in the United Kingdom. Kingstreet informed MCS that its contract with KMG to subadminister the Palan catalog had been terminated. It is not clear whether Kingstreet or MCS informed Spirit that its subadministration rights also had been terminated. In any event, Spirit continued to administer the Palan catalog well into 2007. In August of 2006, Kingstreet granted Crosstown the exclusive right to administer the Palan catalog throughout the world.

Kingstreet alleges that Spirit owes the unpaid Palan catalog royalties to Kingstreet, because Kingstreet is "an intended third-party beneficiary of Spirit's sub-administration contracts with MCS and KMG." (Compl. ¶ 50) Since the filing of the complaint in this action, Spirit has accounted to Kingstreet for all royalties collected on the Palan catalog for the years 2006

4

and 2007.  Thus, the only Palan royalties still at issue in this suit are those collected by Spirit prior to December 31, 2005. Spirit argues that it is not obligated to pay those royalties to Kingstreet because it has properly offset them against the sums owed to it by KMG and MCS.

Spirit alleges and plaintiffs dispute that both KMG and MCS have asserted claims for the very same royalties pursued by plaintiffs in this suit.  Spirit submits an August 17, 2007 email from KMG's administrators to Spirit's U.K. counsel, which states that Spirit owes KMG "$215,416.89 for the periods 1 April 2005 to 31 December 2005."  (Ware Decl. Ex. A)  Spirit also submits an April 17, 2007 letter from MCS's counsel to Spirit's counsel stating that "it is not possible for MCS to confirm it has no claim" to the Palan catalog royalties. (Fried Decl. Ex. L)  In an effort to resolve all of these outstanding claims at once, Spirit has taken initial steps toward litigation in the United Kingdom.

DISCUSSION

The factors to be considered in deciding a motion to dismiss on the ground of *forum non conveniens* were set out by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). Although a plaintiff's choice of forum is entitled to great deference and "should rarely be disturbed," Gilbert, 330 U.S. at 508, where, as here, a foreign plaintiff has chosen to sue in an

American forum, its choice of forum is entitled to somewhat less deference.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-256 (1981).

As a threshold matter, a defendant seeking dismissal on the ground of *forum non conveniens* must show that an adequate alternative forum exists.  Plaintiffs do not dispute that the courts of the United Kingdom are an adequate alternative forum.

Next, the court must determine whether public and private interests favor dismissal.  Gilbert's private interest factors include:  the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining witnesses; and "all other practical problems that make trial of a case easy, expeditious, and inexpensive."  330 U.S. at 508.  Gilbert's public interest factors include: administrative costs borne by congested courts; the local interest in having localized controversies decided at home; the difficulty created by applying foreign law; and the cost of imposing jury duty on local residents.  Id. at 508-509.

*Private Interest Factors*

Private interest considerations weigh heavily in favor of litigation in the United Kingdom.  Plaintiffs attempt to frame this suit as a dispute over Spirit's exploitation of the Palan catalog and collection of royalties in the United States. But

6

Spirit does not contest that it exploited the Palan catalog and collected royalties on it.  Instead, Spirit's sole defense is that it does not owe those royalties to plaintiffs because it has already paid them to English non-parties MCS and KMG, in the form of setoff for debts owed to Spirit by MCS and KMG.  Thus, the only dispute in this case is whether Spirit was entitled to that setoff.

Virtually all of the documents and witnesses relevant to the question of Spirit's right to the setoff are located in the United Kingdom.  Spirit's contracts were with Palan, KMG, and MCS – all U.K. companies.  The relevant witnesses are the employees of those U.K. companies who negotiated the contracts.  If this suit is not dismissed, Spirit will have to engage in the time-consuming and expensive process of obtaining essential documentary evidence and witness testimony under the Hague Convention.  On the other hand, plaintiffs are unable to identify a single relevant witness who resides in New York other than Spirit's own employees, whom Spirit has agreed to produce for discovery and trial in the United Kingdom.  See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 161 (S.D.N.Y. 2004) (dismissing case on ground of *forum non conveniens* where not a single fact witness or piece of documentary evidence relevant to the case was located in the United States).  Thus, plaintiffs can identify no

7

inconvenience to them if this suit is litigated in the United Kingdom instead of the United States.

Moreover, Spirit's rights *vis à vis* plaintiffs cannot be fully and properly adjudicated without the presence of MCS and KMG. Spirit will not be able to implead KMG even in the United Kingdom since KMG is now in bankruptcy administration. Spirit will also have difficulty impleading MCS in this action in New York, because MCS will have a strong defense of lack of personal jurisdiction in this forum. It would be unfair to require Spirit to litigate here without the opportunity to bring in parties and witnesses who are critical to its setoff defense. See Reers, 320 F. Supp. 2d at 160-61. An adjudication of plaintiffs' rights without MCS and KMG will leave Spirit vulnerable to claims by those entities to the same royalties that plaintiffs seek here. Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1002 (2d Cir. 1993) (noting that litigation in the United States without all of the interested parties "creates a risk of inconsistent judgments").

Because the overwhelming majority of the documentary evidence and fact witnesses necessary to resolve this dispute are located in the United Kingdom, the Gilbert private interest factors weigh heavily in favor of litigating this dispute in the United Kingdom.

*Public Interest Factors*

Although it is a closer question, public interest factors also favor dismissal.  If this suit is not dismissed and Spirit is unable to bring in MCS, Spirit will be forced both to defend this action and to appear before courts in the United Kingdom to resolve its rights with respect to MCS and KMG.  This will result in "needless duplication of proof and waste of judicial resources."  Calavo Growers of California v. Generali Belgium, 632 F.2d 963, 968 (2d Cir. 1980).

Plaintiffs have not alleged that the United States has a specific interest in the litigation of this suit in a U.S. court, such as the enforcement of U.S. laws.  See, e.g., DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 32-33 (2d Cir. 2002).  Nor do New York jurors have a particular interest in vindicating the rights of two U.K.-based companies.  On the other hand, the United Kingdom does have an interest in adjudicating the validity of contracts negotiated in the United Kingdom, with U.K. choice-of-law provisions, and involving U.K. parties.

Because of the strong likelihood of duplicative litigation, and because the interests of the United Kingdom in this dispute outweigh those of the United States, the Gilbert public interest factors weigh in favor of litigating this dispute in a U.K. forum.

CONCLUSION

9

For the foregoing reasons, Spirit's motion to dismiss on the ground of *forum non conveniens* is granted on the conditions agreed to by Spirit – that it will appear in a U.K. court and produce its employees in a U.K. court.

SO ORDERED.

Dated:   New York, New York
         October 4, 2007

                          S/_____
                             MIRIAM GOLDMAN CEDARBAUM
                            United States District Judge